**EXHIBIT A**

**Galex Wolf, LLC**
1520 U.S. Hwy 130, Suite 101
North Brunswick, NJ 08920
(732) 257-0550 / fax: (732) 257-5654

**Williams Cuker Berezofsky**
**Mark Cuker, Esq.**
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 / fax: (856) 667-5133

**The Law Office of Christopher J. McGinn**
79 Paterson St.
New Brunswick, NJ 08901
(732) 937-9400 / fax: (800) 931-2408
Attorneys for Plaintiffs and the putative class

| | |
|---|---|
| Margaret Korrow, on behalf of herself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY |
| Plaintiff, | DOCKET NO.: MID-L- *7840* -10 |
| vs. | CIVIL ACTION |
| Aaron's Inc., also known as Aaron's Sales & Lease Ownership, Inc. and formerly known as Aaron Rents, and John Does 1-25 | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Defendant | |

## NATURE OF THE CASE

1. Plaintiff brings this putative class action on behalf of herself and all similarly situated

    New Jersey consumers who entered into "rent-to-own" transactions with Defendant

    Aaron's Inc.  Aaron's charged Plaintiff and class members illegal and usurious interest

    and fees in connection with its rent-to-own sales or leases of household goods to

    predominantly lower income consumers in New Jersey.

1

2. These rent-to-own sales are governed by the Retail Installment Sales Act ("RISA"), N.J.S.A. 17:16C-1 *et seq.* Aaron's violated RISA by charging interest and fees in excess of New Jersey's criminal usury limit applicable under RISA, by failing to disclose certain charges, and by imposing numerous charges that RISA does not authorize, and thus prohibits. These RISA violations in consumer sales constitute deceptive and/or unconscionable commercial practices in violation of the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.* Aaron's further violated the CFA by adding "prorated" amounts to the initial payments in customers' contracts, which also constitutes a deceptive and/or unconscionable commercial practice.

3. Alternatively, if Aaron's rent-to-own transactions were deemed to be leases, rather than sales, the foregoing would constitute unconscionable commercial practices in violation of the New Jersey Uniform Commercial Code ("UCC"), Article 2A, N.J.S.A. 12A:2A-101 *et seq.*, and thereby would violate the CFA as deceptive and/or unconscionable practices.

4. In either event, Aaron's inclusion of these unlawful charges and provisions in its rent-to-own contracts with New Jersey consumers also constitutes one or more violations of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-15.

5. Plaintiff brings this action seeking class-wide damages and appropriate injunctive relief under the CFA, the UCC, and/or TCCWNA for herself and all similarly situated New Jersey consumers.

## FACTUAL ALLEGATIONS

6. Plaintiff Margaret Korrow resides in Ocean County, New Jersey.

7. Defendant Aaron's Inc., formerly Aaron's Rents, Inc., (Aaron's) has a corporate headquarters located at 309 E. Paces Ferry Rd., N.E. Atlanta, Georgia

8. Aaron's is registered to do business in the State of New Jersey as Aaron's Sales & Lease Ownership, Inc., a Foreign Corporation with a main business address of 1015 Cobb Place Blvd, Kennesaw, Georgia and a principal business address of 6701 Blackhorse Pike, Egg Harbor, New Jersey.

9. Aaron's operates retail stores that offer "rent-to-own" contracts for the sale of furniture, electronics, and home appliances.

10. In a civil complaint filed by Aaron's in the New Jersey Superior Court against a non-party consumer, Aaron's described its rent-to-own contracts as follows: "In the typical transaction, the consumer selects the goods they would like to purchase, and Aaron's arranges financing for the purchase of the goods with monthly payments over a set period of time, after which, the consumer owns the goods." According to Aaron's 2009 Annual Report[1], at the end of 2009 there were 1,694 Aaron's stores, of which 1,097 were company-operated and 597 were franchised stores.

11. In 2009, Aaron's earned $1.3 billion in revenue from consumer leases and $43 million from consumer retail sales. These figures do not include the revenue for Aaron's franchised stores.

12. According to an Aaron's brochure[2] to attract franchisees:

---

[1] http://phx.corporate-
ir.net/External.File?item=UGFyZW50SUQ9MzkwNDl8Q2hpbGRGRJRD0tMXxUeXBlPTM=&t=1
[2] http://www.aaronsfranchise.com/Portals/2/Aarons_Franchise_Brochure2007.pdf

The typical leasing customer is an hourly wage job-holder earning a weekly paycheck and living in a rented house or apartment. They owe little consumer debt, hold no real estate or financial instruments, have no savings account and function without credit cards. They operate on a cash and carry basis. Over 30% of the nation's 96 millions households fit this model

The leasing customer's wants and needs are no different from those of buyers with credit. They consider items such as stereos, televisions, home furnishings and major appliances as necessities, not luxuries. For the millions who cannot afford to purchase these products outright, or do not have the credit to finance the purchases, Aaron's has become a major source for providing these products.

...In fact, there is little disparity between the final purchase price at Aaron's and the final purchase price at a conventional retailer after interest and service charges. In some cases, our "cash and carry" prices are actually lower than many retailers. Thus, Aaron's offers a retail value plus the added services of no credit checks, no debt obligations, no-cost repair services, and absolutely no obligation to the consumer beyond the current lease payment due.

13. Approximately twelve Aaron's company-operated and franchised retail locations operate

in New Jersey, of which approximately nine are company-operated and three are

franchised stores.

14. John Does 1-25 represent parties whose names are not yet known to Plaintiff.

15. During the relevant time period, Aaron's corporate operated retail locations in the

following New Jersey towns: Edison, Egg Harbor, Ewing, Lindenwold, Neptune City,

Perth Amboy, Plainfield, Pennsauken, and Vineland.

16. Aaron's Store F491 is an Aaron's franchised store that operates at 598 Bloomfield Ave.,

Bloomfield, New Jersey.

17. Aaron's Store F568 is an Aaron's franchised store that operates at 190 Main St.,

Hackensack New Jersey.

18. Aaron's Store F455 is an Aaron's franchised store that operates at 1555 High St., Mount

Holly New Jersey.

4

19. Aaron's provided the consumer contracts utilized by all Aaron's New Jersey stores during the relevant time period.

20. On March 15, 2006, the New Jersey Supreme Court ruled against one of Aaron's largest competitors, holding that the New Jersey Retail Installment Sales Act ("RISA") applies to rent-to-own contracts in the state, and that RISA applies New Jersey's criminal usury limit to those transactions. *Perez v. Rent-A-Center, Inc.*, 186 N.J. 188, 892 A.2d 1255, *motion for clarification granted*, 188 N.J. 215, 902 A.2d 1232 (2006), *cert. denied*, 549 U.S. 1115, 127 S.Ct. 984, 166 L.Ed.2d 710 (2007).  As a result of that ruling, Aaron's implemented certain changes in its business practices in New Jersey, but did not bring its rent-to-own contracts in full compliance with RISA, as set forth in detail in this pleading.

21. On July 23, 2009, Plaintiff entered into a rent-to-own contract with Aaron's for a bedroom set to be used for personal, family or household purposes.

22. The July 23, 2009 rent-to-own contract was negotiated and entered into at Aaron's company-operated store #CO996, located at 1740 N. Olden Ave., Suite A5, Ewing, New Jersey.

23. A representative of Aaron's presented Plaintiff with a document entitled "Consumer Lease Agreement and Federal Consumer Leasing Act Disclosures", a copy of which is attached as **Exhibit A** (Aaron's Consumer Agreement").

24. In addition to the Aaron's Consumer Agreement, the representative presented Plaintiff with a document entitled an "Aaron's Service Plus Program Addendum" a copy of which is included in **Exhibit B**.

25. The July 23, 2009 rent-to-own contract identifies the "cash price" of the bedroom set as $1827.92.

26. The July 23, 2009 rent-to-own contract includes a provision labeled "Lease Ownership Plan", under which Plaintiff could purchase the bedroom set by making the regular monthly contract payments of $135.64 for 24 months, resulting in a "Total Amount to Acquire Ownership of $3042.48.".

27. The July 23, 2009 rent-to-own contract lists a "Delivery Date" of July 23, 2009.

28. Under the terms of the of the July 23, 2009 rent-to-own contract, the Plaintiff had the option of becoming the owner of the bedroom set upon payment of a sum substantially equivalent to or in excess of the value of the laptop computer , and by otherwise fully complying with the terms of the contract.

29. Under the terms of the July 23, 2009 rent-to-own contract, possession of the bedroom set was to be transferred to the Plaintiff who would receive title at some future time upon payment of the full price or upon the happening of some other conditions or contingencies. Under the contract, if the conditions or contingencies were not satisfied, title of the laptop would not pass to Plaintiff.

30. The July 23, 2009 rent-to-own contract is a "conditional sales contract, or similar instrument" within the meaning of those words as used in the definition of "retail installment contract" set forth at N.J.S.A. 17:16C-1.

31. The July 23, 2009 rent-to-own contract is a "retail installment contract" subject to the New Jersey Retail Installment Sales Act (RISA), N.J.S.A. 17:16C-1, et seq.

32. In connection with the July 23, 2009 rent-to-own contract Aaron's representative provided Plaintiff with a brochure explaining the benefits of Aaron's "ServicePlus" program, a copy of which is attached as **Exhibit C**. The brochure indicates that some

benefits are not available in all locations but does not identify the locations or the benefits affected.  The Aaron's representative also explained the ServicePlus program to Plaintiff.

33. Under the Aaron's "ServicePlus" program, Aaron's customers are charged a 10% fee on top of each lease payment in exchange for benefits which include:

    a.  "free delivery";

    b.  a 60 day "Limited Extended Warranty" upon purchase of the property;

    c.  "No Processing Fee";

    d.  the right to purchase property at the "Everyday Low Price" within 90 days;

    e.  25% reduction in the amount of the first payment of the next lease with Aaron's.

34. The Aaron's Consumer Agreement does not identify a cost to the consumer for the return of the property at the end of the lease period or the process to be followed.

35. Although the Aaron's Consumer Agreement is in substance a 24-month rent-to-own sales contract, Defendant drafted the Agreement in a form purporting to create four consecutive six-month rental periods.

36. Aaron's Customer Agreement includes a segregated box prominently displayed on the first page that contains disclosures of the terms of the financing for the goods sold based on a six-month contract rather than a 24-month contract.

37. Under the Aaron's Consumer Agreement, Plaintiff's initial six-month lease term for the identified furniture would begin on the "Delivery Date" on the contract, which is identified as July 23, 2009.

38. Six months from July 23, 2009 is January 23, 2010.

39. According to the Aaron's consumer agreement, the lease term ended on January 23, 2010.

40. Under the Aaron's Consumer Agreement, Plaintiff was obligated to pay Aaron's six
    initial monthly payments of $135.64, payable on the 15th of each month of the lease term,
    which included a lease payment of $115.25, a ServicePlus Fee of $11.52 , and Sales/Use
    Tax of $8.87.

41. In addition, Plaintiff was obligated to pay a "prorated amount" of $35.04 with her initial
    payment, for a total initial payment due at signing or delivery of $170.68.

42. The $35.04 "prorated amount" roughly equals eight (8) days of payments, with daily
    payments calculated by dividing the full monthly payment of $135.46 by 31 days.

43. The "prorated" amount apparently reflected lease payments for the eight (8)-day period
    between the delivery date of the goods (listed in the contract as July 23, 2009) and the
    preceding regular payment due date (July 15, 2009).

44. The $35.04 "prorated payment" was charged despite the fact that the contract did not
    provide for the initial term to extend beyond the six-month anniversary of the date of
    delivery.  The contract did not provide for the initial six-month term to end on the 15th of
    the month following the six-month anniversary of delivery of the goods).

45. Aaron's did not remit to the State of New Jersey sales tax charged on the amounts
    charged to Plaintiff as a "ServicePlus" fee.

46. Plaintiff was obligated to pay Aaron's a total of $848.88 to lease the bedroom set for a
    six month period beginning on July 23, 2009 and ending January 23, 2010.

47. Plaintiff and a representative of Aaron's signed the July 23, 2009 rent-to-own contract.

48. On or about July 23, 2009, Plaintiff paid Aaron's $240 in cash and was provided with a
    receipt for that amount, a copy of which is attached as **Exhibit D**.

8

49. The $240 payment included the $170.68 identified as the total payment due at signing on

    the July 23, 2009 rent-to-own contract.

50. The $240 paid by Plaintiff included the $35.04 "prorated payment" fee charged by

    Aaron's.

51. Aaron's did not provide Plaintiff with a copy of the 60-day warranty purportedly

    included as part of the "Service Plus" program, beyond the language included on the

    Aaron's Consumer Agreement itself.

52. Aaron's July 23, 2009 rent-to-own contract with Plaintiff included the following

    provision:

    "If I fail to pay the Total of Payments or if I fail to return or surrender the Leased
    Property when due, or if I breach any of my other obligations, I will be in default
    of this Agreement and my right to obtain possession will automatically terminate.
    In such event, Aaron's will be entitled to immediate possession of the Leased
    Property, wherever located.  I will remain liable for any unpaid portion of the
    Total Payments and for the amount of any unpaid portion of any Payment that is
    due after the termination of the Lease Term up to the fair market value of the
    Leased Property, until I return or surrender it to Aaron's in its present condition,
    normal wear and tear excepted.  I will be liable for all costs of collection and
    repossession, including reasonable attorney's fees, to the extent allowed by law."

53. About six months prior to the June 23, 2009 rent-to-own contract for the bedroom set,

    Plaintiff had entered into a previous rent-to-own contract with Aaron's for a laptop

    computer, under which she was charged an additional fee for a "Service Plus" plan which

    was supposed to entitle her to a 25% discount on future rent-to-own contracts, among

    other benefits.

54. Aaron's 2009 rent-to-own contract for the bedroom set did not reflect the 25% discount

    to which Plaintiff was entitled under the previous rent-to-own contract.

55. Had Aaron's provided Plaintiff with a 25% discount, she would have paid 25% less than

    her initial monthly payment of $170.68.

9

56. Aaron's did not provide Plaintiff with a 25% discount on her first payment on the bedroom set.

57. Aaron's subsequently delivered bedroom furniture consisting of bed (including headboard, mattress, box spring, footboard, and metal frame), tall dresser, dresser with mirror and nightstand set to Plaintiff's residence.

58. The nightstand that was delivered was damaged.

59. Plaintiff observed that the nightstand was damaged and told the Aaron's delivery person that she refused to accept it because of its damaged condition.

60. Plaintiff subsequently spoke with a representative of Aaron's who told her she could keep the damaged nightstand and Aaron's would delivery a new nightstand free of charge.

61. Based on this promise, Plaintiff took acceptance of the non-conforming nightstand, for which the Aaron's Consumer Agreement identified a monthly lease rate of $8.17.

62. Plaintiff then returned to the Aaron's Ewing store to pick up a new nightstand.

63. An Aaron's representative told Plaintiff that Aaron's would not provide her with a new nightstand unless she paid an additional $10 per month, nor would it allow her to exchange the damaged nightstand for one that was not damaged.

64. Subsequently, Plaintiff spoke with a representative of Aaron's and explained that she could not afford to pay the full amount for the bedroom set. The Aaron's representative agreed to accept a monthly payment from Plaintiff of less than the full contract amount.

65. Ultimately, Aaron's demanded the return of the bedroom set and the lap top computer.

66. In October of 2009, two representatives arrived at Plaintiff's residence and repossessed the bedroom set and the laptop computer.

67. Aaron's repossessed the mattress and box spring that were not identified on the Aaron's
    Consumer Agreement.

68. In addition to the initial payment, Plaintiff made two other payments on the bedroom
    furniture prior to Aaron's repossession. She did not make any payments subsequent to
    the repossession.

69. As of the time the bedroom set was repossessed by Aaron's, Plaintiff had paid Aaron's
    more than $300 for the bedroom set.

70. Plaintiff subsequently spoke to a representative of Aaron's and asked if she could reclaim
    the data on the computer at the time it was repossessed.   The Aaron's representative said
    that she could only get the data back by making the remaining payments owed on the
    laptop.

71. Aaron's disposed of the bedroom set after repossessing those items from Plaintiff.

72. Aaron's disposed of the laptop computer after repossessing it from Plaintiff.

73. On or about December 22, 2009, Aaron's Sales & Lease of Ewing, New Jersey sued
    Plaintiff in the New Jersey Superior Court, Mercer County, Special Civil Part, Small
    Claims Section, Docket Number SC-1580-09.

74. In its Complaint, a copy of which is attached as **Exhibit E**, Aaron's made the following
    allegations: "Defendant failed to uphold terms of lease agreement making only 2.5 of 24
    required monthly payments of $135.64.  Also refused to return merchandise."

75. Plaintiff was not obligated to make 24 monthly payments under the terms of the terms of
    Aaron's July 23, 2009 rent-to-own contract.

76. At the time Aaron's represented to the Court that Plaintiff had "refused to return
    merchandise", Aaron's had already repossessed that merchandise.

11

77. According to Aaron's Complaint against Plaintiff, Plaintiff had paid approximately $339.11 as of the date that Aaron's sued Plaintiff.

78. The amount of $339.11 is $509.78 less than the full amount owed on the initial six-month lease term.

79. Aaron's demand for $3,000 was $2,151.12 more than the full amount of $848.88 due under Aaron's consumer agreement for the initial 6-month lease term.

80. When Aaron's sues New Jersey customers to collect an alleged debt, it routinely represents to the Court that the underlying contract is for a 24-month term.

81. When Aaron's sells its consumer debts it provides the debt buyers with contract summaries that represent that the consumer contracts are for a 24-month term.

82. After Plaintiff retained an attorney with Legal Services of New Jersey, Aaron's voluntarily dismissed the Complaint.

83. New Jersey Court records indicate that Aaron's routinely files debt collection lawsuits in New Jersey Courts to collect on contracts the same or similar as the contract that it entered with Plaintiff.

84. Plaintiff has suffered ascertainable losses that include, but are not limited to:

    f.   The $35.04 prorated amount paid by Plaintiff and any tax charged to Plaintiff on this amount;

    g.   The 25% discount on her initial payment of $42.67 and any tax charged to Plaintiff on this amount;

    h.   The amounts that Plaintiff paid for the ServicePlus program;

    i.   The amounts Plaintiff paid Aaron's for a new nightstand and any tax charged to Plaintiff on this amount;

    j.   The pro-rata amount for the time which Aaron's charged Plaintiff for the bedroom

          set furniture prior to the date of delivery of that furniture;

    k.   The value of the computer files on the laptop computer when it was repossessed

          by Aaron's;

    l.   The interest charges embedded within the monthly lease payments;

    m.  The difference between what Plaintiff paid to Aaron's and the equitable value of

          her possession of the goods for the time she had possession; and

    n.   The amount of improper debt demanded by Aaron's in its lawsuit against

          Plaintiff.

## CLASS ACTION ALLEGATIONS

85. This action is brought and may properly proceed as a class action, pursuant to the

    provisions of Rule 4:32 of the New Jersey Court Rules.

86. Plaintiff seeks certification of a class initially defined as follows:

> All persons who entered into a rent-to-own contract with Aaron's or an Aaron's
> franchisee store using a form of contract the same or similar to the contract
> utilized by Plaintiff at any time since March 16, 2006.

Excluded from the class are any officers, directors, or employees of Defendant and their

immediate family members, and any officers, directors, or employees of Aaron's franchised

stores, and any judge presiding over this action and their immediate family members.

87. The class for whose benefit this action is brought contains members so numerous that

    joinder of all members is impracticable.

88. Plaintiff's claims are typical of the claims of the members of the class, since all such

    claims arise out of the same alleged unlawful practices by Defendant in connection with

    its rent-to-own contracts for consumer goods.

13

89. Plaintiff has no interests antagonistic to those of the class.

90. The class, of which Plaintiff is a member, is readily identifiable.

90. Plaintiff will fairly and adequately protect the interests of the class, and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed class counsel has investigated and identified potential claims in the action; has significant experience in litigating consumer class actions and claims of the type asserted in this action.

91. There are questions of law and fact common to the members of the class that predominate over questions affecting only individuals. These common questions include:

    a.    Whether Defendant's rent-to-own contracts are subject to RISA;

    b.    Whether Defendant has engaged in a pattern and practice of contracting for and/or charging fees and interest in violation of RISA

    c.    Whether Defendant's contracting for and/or charging of fees and interest in violation of RISA also constitute deceptive and/or unconscionable commercial practices in violation of the CFA;

    d.    Whether Defendants' CFA violations caused loss in the amount of the unlawful fees paid to or improperly imposed by Defendant;

    e.    Whether Defendant's "ServicePlus" charges are time price differentials and/or interest under RISA;

    f.    Whether Defendant properly disclosed the cash price of the "ServicePlus" charges;

    g.    Whether the stipulated damages provision in Aaron's rent-to-own contract constitutes a penalty and/or is unconscionable under the NJUCC or the CFA;

h.      Whether and to what extent Defendant actually provided services described in the "ServicePlus" addendum;

i.      Whether Defendants' charging of interest in excess of the rate permitted by the criminal usury statute and/or RISA also constitute deceptive and/or unconscionable commercial practices in violation of the CFA;

j.      Whether Defendants' CFA violations caused loss in the amount of the unlawful interest paid to or improperly imposed by Defendants;

k.      Whether Defendants' false disclosures constitute misrepresentations, deceptive and/or unconscionable commercial practices in violation of the CFA;

l.      Whether Defendant's CFA violations caused loss in the amount of the undisclosed and/or misrepresented fees paid to and/or imposed by Defendant; and

m.      Whether any of the aforementioned violations of RISA, the Criminal Usury statute, the UCC or the CFA constitute violations of the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA");

92. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the class are significant, the amount is modest compared to the expense and burden of individual litigation.  A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort and expense.

93. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

94. The prosecution of separate actions by individual members of the class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

95. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to class as a whole.

96. Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS CLAIMS

### COUNT I
### VIOLATIONS OF THE CONSUMER FRAUD ACT (CFA) BASED ON VIOLATIONS OF THE NEW JERSEY RETAIL INSTALLMENT SALES ACT (RISA) AND THE CRIMINAL USURY STATUTE

97. RISA is a consumer protection statute that imposes strict disclosure duties and substantive restrictions with respect to interest and fees charged to consumers by retail installment sellers, including rent-to-own business such as Aaron's

98. Among other restrictions, RISA incorporates the 30% interest cap imposed by the New Jersey criminal usury statute, N.J.S.A. 2C:21-19, and prohibits retail sellers such as Aaron's from contracting for or charging interest (or "time price differential" as interest is referred to in RISA) in excess of 30% per annum.

99. Aaron's July 23, 2009 rent-to-own contract with Plaintiff provides for a time-price differential in excess of 30% per annum, in violation of RISA and the criminal usury statute.

100.    Aaron's July 23, 2009 rent-to-own contract with Plaintiff violates RISA by failing to disclose the monthly "Service Plus" charges as part of the time-price differential even though they fall within RISA's definition of "time price differential" which includes "the amount or amounts, *however denominated or computed*, in addition to the cash price or prices, to be paid by the retail buyer for the privilege of purchasing goods or services pursuant to a retail installment contract or a retail charge account. The term does not include the amount, if a separate charge is made therefore, for insurance and official fees."

101.    There were no charges for "insurance or official fees" provided for in the July 23, 2009 rent-to-own contract with Plaintiff.

102.    Aaron's did not disclose a "cash price" or otherwise disclose the total price for the "ServicePlus" fee in the July 23, 2009 rent-to-own contract with Plaintiff.

103.    In addition to restricting the time-price differential charged in rent-to-own contracts, RISA also prohibits retail sellers from requiring consumers to pay any fee or charge unless it is expressly authorized under RISA.  Specifically, RISA provides that retail sellers must not "charge, contract for, collect or receive from any retail buyer, directly or indirectly, any further or other amount for costs, charges, insurance premiums, examination, appraisal service, brokerage, commission, expense, interest, discount, fees, fines, penalties or other things of value in connection with retail installment contracts or retail charge accounts other than the charges permitted by this act..." N.J.S.A. 17:16C-50.

17

104.   The monthly "ServicePlus" fee, which supposedly includes an assortment of services, warranties, and discounts for which no "cash prices" are disclosed, is an unauthorized fee in violation of RISA at N.J.S.A. 17:16C-50.

105.   Aaron's standard form contract used to prepare the July 23, 2009 rent-to-own contract with Plaintiff and the contracts of other putative class members includes pre-printed boilerplate provisions for the imposition of charges not authorized by RISA, including, without limitation, the following:

   a.   A $15 charge if a payment check "is returned to Aaron's for any reason"; RISA permits return check fees *only* for checks that are returned "due to insufficient funds in the buyer's account." N.J.S.A. 17:16C-42(e)

   b.   A $10 "In-Home Collection" fee, charged if "Aaron's must come to [the buyer's] home to collect a payment."

   c.   A monthly "Service Plus Fee" of $11.52 for payment for consideration that is not described in the contract, in violation of N.J.S.A. 17:16C-21, which mandates that all retail installment contracts "shall contain all of the agreements between the retail buyer and retail seller relating to the installment sale of the goods purchased."

106.   Aaron's standard form contract used to prepare the July 23, 2009 rent-to-own contract with Plaintiff includes a pre-printed boilerplate provision labeled "Early Payment Option" that requires buyers who wish to complete the contract prior to the scheduled final payment date to pay the cash price of the goods *plus* the time price differential in order to obtain ownership, in violation of RISA at N.J.S.A. 17:16C-43,

18

which requires retail sellers to rebate the time price differential upon the buyer's prepayment.

107.     Aaron's practice of contracting for and charging interest in excess of the 30% criminal usury cap, as incorporated into RISA, constitutes deceptive and/or unconscionable commercial practices in violation of the CFA at N.J.S.A. 56:8-2.

108.     Aaron's practice of contracting for and charging fees and charges not specifically authorized by RISA constitutes deceptive and/or unconscionable commercial practices in violation of the CFA at N.J.S.A. 56:8-2.

109.     Aaron's practice of contracting for and charging the time-price differential in connection with the "Early Purchase Option" in violation of RISA constitutes deceptive and/or unconscionable commercial practices in violation of the CFA at N.J.S.A. 56:8-2.

110.     Plaintiff suffered ascertainable loss from Aaron's violations of the CFA, including without limitation the amounts of time-price differential, charges, and fees that she was charged in contradiction to the criminal usury statute and RISA.

111.     Plaintiff's ascertainable loss also includes monies paid to Aaron's and Aaron's demand for an improper debt in filing the collection action against Plaintiff.

## COUNT II

## CFA VIOLATIONS BASED ON AARON'S DECEPTIVE "PRORATED" CHARGES

112.     Plaintiff, on behalf of herself and the members of the putative class, restates all prior allegations as though fully pled here.

113.     Defendant has also engaged in deceptive and/or unconscionable commercial practices in violation of N.J.S.A. 56:8-2 by adding "prorated" amounts to the initial payments in Plaintiff and other customers' contracts, without providing them possession

of the goods during the "prorated" period, without extending the lease for the "prorated"

time, and without crediting the final lease payment to reflect the "prorated" charge.

114.     Aaron's practice of charging "prorated" fees is a deceptive and unconscionable

business practice designed to collect additional charges from customers without

providing any additional consideration in return.

115.     Aaron's unlawful practices caused Plaintiff and the putative class members to

suffer ascertainable loss in the amount of the "prorated" charge.

116.     Plaintiff's ascertainable loss is $35.04, the amount that she paid Aaron's as a

"prorated" charge.

**COUNT III**
**ALTERNATIVE CLAIMS UNDER THE UNIFORM COMMERCIAL CODE,**
**ARTICLE 2A AND RELATED CFA CLAIMS**

117.     Plaintiff, on behalf of herself and the members of the putative class, restates all

prior allegations as though fully pled here.

118.     Strictly as an alternative to Count I, Plaintiff, on behalf of herself and the

members of the putative class, brings claims under the New Jersey Uniform Commercial

Code ("UCC"), Article 2A, N.J.S.A. 12A:2A-101, *et seq.*

119.     The usurious interest / time price differential charges and other unlawful fees as

described in detail in Count I, *supra*, constitute unconscionable lease terms in violation of

the UCC at N.J.S.A. 12A:2A-108.

120.     Plaintiff and the other putative class members were damaged by the

unconscionable lease terms in the amount of the usurious interest / time price differential

charges and other unlawful fees as described in detail in Count I, *supra*.

121.     Aaron's July 23, 2009 rent-to-own contract contains provisions which are

unconscionable and in violation of the UCC at N.J.S.A. 12A:2A-108.

122.     The "prorated" charges described in detail in Count II, *supra*, constitute

unconscionable lease terms in violation of the UCC at N.J.S.A. 12A:2A-108.

123.     The following stipulated damage provision in Aaron's July 23, 2009 rent-to-own

contract with Plaintiff is unreasonable, unconscionable and violates the UCC at N.J.S.A.

12A:2A-108:

"If I fail to pay the Total of Payments or if I fail to return or surrender the Leased
Property when due, or if I breach any of my other obligations, I will be in default
of this Agreement and my right to obtain possession will automatically terminate.
In such event, Aaron's will be entitled to immediate possession of the Leased
Property, wherever located.  I will remain liable for any unpaid portion of the
Total Payments and for the amount of any unpaid portion of any Payment that is
due after the termination of the Lease Term up to the fair market value of the
Leased Property, until I return or surrender it to Aaron's in its present condition,
normal wear and tear excepted.  I will be liable for all costs of collection and
repossession, including reasonable attorney's fees, to the extent allowed by law."

124.     The stipulated damage provision is:

     A.  not reasonable;

     B.  disproportionate to the actual harm;

     C.  in excess of the common practice in the industry;

     D.  and would allow Aaron's to claim an onerous penalty the breach of any of

          Plaintiff's obligations.

125.     The stipulated damage provision is unenforceable.

126.     Plaintiff and the other putative class members were damaged by the

unconscionable lease terms in the amount of the "prorated" charges described in detail in

Count II, *supra*.

127.     Defendant's violations of the UCC Article 2A also constitute unconscionable commercial practices in violation of the CFA, which caused Plaintiff and the other putative class members an ascertainable loss in the amount of the usurious interest / time price differential charges, "prorated" charges, and other unlawful fees as described in detail in Counts I and II, *supra*.

### COUNT IV: VIOLATIONS OF THE TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT (TCCWNA)

128.     Plaintiff, on behalf of herself and the members of the putative class, restates all prior allegations as though fully pled here.

129.     Defendant has violated the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") at N.J.S.A. at N.J.S.A. 56:12-15 by entering into consumer contracts and displaying and/or giving consumer notices that contained provisions that violated clearly established rights of Plaintiffs and the other putative class members and responsibilities of Defendants, as established by State or Federal law.

130.     With respect to Plaintiff and the members of the putative class, Defendant has violated TCCWNA at N.J.S.A. 56:12-15 by offering, entering into and/or displaying contracts that contain provisions and/or notices that violate RISA, the Criminal Usury law, and the CFA as set forth at length in Count I and in the Allegations of Fact section of this Complaint, supra.

131.     Defendant has also violated TCCWNA at N.J.S.A. 56:12-15 by offering, entering into and/or displaying contracts that contain provisions and/or notices that violate the CFA as set forth at length in Count II and in the Allegations of Fact section of this Complaint, supra.

132.     Defendant violated TCCWNA at N.S.J.A. 56:12-15 by deceptively disclosing the
terms of financing in its 24-month rent-to-own contracts as though the contract had only a
six-month term, in violation of the CFA at N.J.S.A. 56:8-2.

133.     Defendant violated TCCWNA at N.S.J.A. 56:12-16 by inserting a provision in its
contract charging the customer attorney's fees "to the extent allowed by law" without
specifying the extent to which attorney's fees are permitted under New Jersey law.

134.     Alternatively, Defendant has violated TCCWNA at 56:12-15 by offering, entering
into and/or displaying contracts that contain provisions and/or notices that violate the
UCC, Article 2A and the CFA as set forth at length in Count III and in the Allegations of
Fact section of this Complaint, supra.

135.     Defendant is therefore liable to Plaintiffs and the members of the putative class
for statutory damages of not less than $100 for each violation of TCCWNA, plus actual
damages, plus attorneys' fees and costs pursuant to N.J.S.A. 56:12-17

**WHEREFORE**, Plaintiff requests the following relief:

a.  Certification of the class, as defined herein, *supra*, for equitable relief pursuant to R.
4:32-1(b)(2)

b.  Certification of the class, as defined herein *supra*, for monetary relief under the CFA
and TCCWNA, pursuant to R. 4:32-1(b)(3)

c.  Appointment of Plaintiff as class representative and the attorneys for Plaintiff listed in
the caption of this pleading as class counsel;

d.  Entry of a Judgment against Defendant for equitable relief on behalf of the class as
authorized by the Consumer Fraud Act ("CFA"), at N.J.S.A. 56:8-19, including,
without limitation a declaratory judgment in favor of the class and a permanent
injunction against future violations and requiring Defendants to notify members of
the class of their violations and advising them that if they have sustained an
ascertainable loss that they may seek recovery of their individual damages in a
separate action against the defendants;

23

e. Entry of a Judgment against Defendant for statutory damages in favor of Plaintiff and all other members of the class for Defendants' violations of the TCCWNA, pursuant to N.J.S.A. 56:12-17;

f. Entry of a Judgment against Defendant for damages for Plaintiff in the amount of treble his ascertainable loss caused by Defendants' CFA violations, pursuant to N.J.S.A. 56:8-19;

g. Declaratory judgment that the Aaron's stipulated damage provision is unenforceable;

h. For an accounting of all amounts paid to Aaron's by Plaintiff and those similarly situated;

i. Reasonable attorneys' fees and costs of suit in connection with the action, pursuant to the CFA, at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17;

j. Pre-judgment and post-judgment interest; and

k. Such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Andrew R. Wolf, is hereby designated as trial counsel for the Plaintiff, in the above matter.

## CERTIFICATION

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated, except that Defendant in this matter filed a collection action in New Jersey Superior Court, Mercer County, Special Civil Part, Small Claims Section, Docket Number SC-1580-09 which has been dismissed without prejudice to Plaintiff's claims. Aaron's continues to file collection lawsuits against members of the putative class. I further certify that I know of no party who should be joined in the action at the time.

24

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**GALEX WOLF, LLC**
Attorneys for Plaintiff

By: _____

Henry P. Wolfe

Dated:  October 21, 2010

25

# EXHIBIT A

Appended to:
Class Action Complaint and Jury Demand
*Korrow vs. Aaron's Inc., et als.*
Docket No.: MID-L-_____-10

Consumer Lease Agreement and Federal Consumer Leasing Act Disclosures

| Agreement Number:   5559 | Agreement Date:   July 23, 2009 |
|---|---|
| | Delivery Date:   July 23, 2009 |

| Aaron Rents, Inc<br>Aaron's Sales and Leasing<br>1120 N. OLDEN AVE.<br>SUITE A5<br>EWING, NJ 08608<br>Phone : 609-912-0040 | Customer Name:   MARGARET KORROW<br>Address1:<br>Address2:   REDACTED<br>City:<br>Phone : |
|---|---|

**Lease Agreement:** I agree to lease the items listed ("Leased Property") from Aaron Rents, Inc. d/b/a Aaron's Sales and Leasing ("Aaron's") according to the terms and conditions of this Consumer Lease Agreement ("Agreement"). I agree that this is a lease and not a retail installment sales contract.

**Lease Term:** My Lease Term is for 6 months, commencing on the Delivery Date set forth above. For the Lease Term, I agree to pay Aaron's the Total of Payments, set forth below, in Monthly or Semi-monthly Payments, set forth below, payable in advance on the Payment Due Date, set forth below, without further notice. I may renew this Agreement after the Lease Term by making another Monthly Payment or Semi-monthly Payment ("Renewal Term") on the Payment Due Date. On or before the last day of the Lease Term or any Renewal Term I must either renew this Agreement for a Renewal Term or I must return or surrender the Leased Property to Aaron's.

| | Leased Property | | | | |
|---|---|---|---|---|---|
| Item # | Serial # | Model # | Description | Monthly Lease Rate | Condition |
| 1600787536 | | RE888MR | 7605EM8 MIRROR | $5.14 | NEW |
| 1600800351 | | RE888NS | 7607EM8 NIGHTSTAND | $8.17 | NEW |
| 1600800404 | | RE888QH | 7609EM8 4/6-5/0 HEADBOARD | $11.01 | NEW |
| 1600802419 | | RE888DR | 7603EM8 DRESSER | $15.34 | NEW |
| 1600800221 | | RE888TV | 7601EM8 TV CHEST | $14.78 | NEW |

Please See Addendum for Additional Inventory

| Amount Due at Lease Signing or Delivery | Monthly Payments | Total of Payments |
|---|---|---|
| Downpayment (if any)   $0.00<br>First Monthly Payment (Lease Payment, plus Service Plus Fee or Delivery Fee (If applicable), plus Sales/Use Tax)   $170.68<br>Refundable Security Deposit (if any)   $0.00<br><br>Total Payment Due At Signing or Delivery:   $170.68 | Your first Monthly Payment of $ 35.64 plus a prorated amount of $35.04 is due on July 23, 2009, followed by 5 Monthly Payments of $135.64 due on the 15th of each Month.<br><br>The total of your Monthly Payments for the Lease Term is $848.88 | (The amount you will have Paid by the end of the Lease Term)<br><br>Total of Payments   $848.88 |

**Purchase Option at End of Lease Term:** I have an option to purchase the Leased Property at the end of the Lease Term for $2,064.37, plus all applicable sales taxes. I, also, have 'Lease Ownership' and 'Early Purchase' Purchase Options, as described below.

**Other Important Terms:** Read the rest of this Agreement carefully for additional information on Purchase Options, maintenance, responsibilities, warranties, late payment and default charges, insurance and any security interest, if applicable.

**Monthly Payments:** My Monthly Payments includes a Lease Payment of $115.25, a Service Plus Fee of $11.52, and Sales/Use Tax of $8.87 for a total Monthly Payment of $135.64. My Monthly Payments will be due starting August 1, 2009 and continuing thereafter on the 1st ("Payment Due Date").

**Semi-Monthly Payments:** Instead of a Monthly Payment, I may choose to make a Semi-monthly Payment that includes a Lease Payment of $57.59, a Service Plus Fee of $5.76, and Sales/Use Tax of $4.43 for a total Semi-monthly Payment of $67.78 by making the Semi-monthly payment on or before the next Payment Due Date and continuing thereafter on each successive 1st and the 15th of the month ("Payment Due Date").

**Taxes:** I agree to pay all applicable Sales/Use Taxes on the Leased Property. Based upon the tax rates in effect as of the Agreement Date, the total amount of Sales/Use Tax that I shall pay during my Lease Term is $53.24. I understand that the applicable tax rates may change, causing my total payment amount to change, while this Agreement is in effect.

**Cash Price:** The total Cash Price of Leased Property is $1,827.92. The unpaid cash balance after giving effect to my downpayment is $1,827.92. The Cash Price plus costs of Service Plus or Delivery Fee (If chosen below) is $2,104.40.

**Purchase Options:** I understand that this transaction is a Lease and that I can return the Leased Property at the end of the Lease Term. I further understand that this Agreement is not a conditional or retail sale or financing arrangement. However, I have and may exercise an option to purchase and acquire ownership of the Leased Property in any one of two ways: ("Purchase Options")

   **Lease Ownership:** This is a 24 month Lease Ownership Plan with an initial Lease Term of 6 months and 0 day. If I choose the monthly payment option, I may acquire ownership by paying, when due, the Amount Due at Lease Signing plus consecutive Monthly Payments (the equivalent of 24 full Monthly Payments) for the Total Amount to Acquire Ownership of $3,042.48. If I choose the Semi-monthly Payment option, I may acquire ownership by paying, when due, consecutive Semi-monthly Payments (the equivalent of 48 full Semi-monthly Payments) for a Total Amount to Acquire Ownership of $3,040.80 The amount of the time price differential (similar to an interest charge) is $938.08.

   **Early Purchase:** By paying, at any time, an amount equal to the Cash Price plus the applicable time price differential, plus any other fees due and sales tax. Please see your Aaron's store to determine the early purchase payment amount.

   **Ownership:** I understand that title to the Leased Property remains with Aaron's and that I will neither own nor obtain an equity interest in the Leased Property until I have satisfied one of the Purchase Options.

Agreement Number: 5599 - 8.9.4  (FD;10/01/03  PD:07/23/09 - ) - (C0996) P

# EXHIBIT B

Appended to:
Class Action Complaint and Jury Demand
*Korrow vs. Aaron's Inc., et als.*
Docket No.: MID-L-_____-10

# AARON'S SERVICE PLUS PROGRAM ADDENDUM

I elected to participate in the Aaron's Service Plus Program and this Addendum is a part of my Lease Agreement Number 5599 with Aaron's. The benefits included in the Aaron's Service Plus Program are as follows:

1. **Application Processing:** There is no charge to review and investigate my lease application, to prepare my Agreement or to activate my account.

2. **Delivery:** There is no charge to deliver and set up my Leased Property or, where applicable, to install rims or tires.

3. **Relocation:** There is no charge to relocate and set up my Leased Property if I move to another residence that is within 15 miles of the Aaron's store to which I was making my Renewal Payments at the time of my move.

4. **Payment Holiday:** I may defer one-half of 2 Monthly Renewal Payments for any reason whatsoever and not be regarded as being in default or subject to a Late Fee. These deferred Renewal Payments then will become the last of the Payments that I must make in order to acquire ownership of the Leased Property. To get these deferrals, I must have made 4 Monthly Renewal Payments or 8 Semi-Monthly Renewal Payments in a timely manner. I may obtain these deferrals once while my Agreement is in effect by coming to the Aaron's store and signing a Payment Holiday Request Form prior to the due date of the Renewal Payments of which I wish to defer one-half.

5. **New Agreement Discounts:** I will receive a 15% discount off the Total Initial Payment, less the prorated amount, for each new lease agreement that I enter into with Aaron's. I understand that this discount is not applicable to this Agreement and cannot be combined with any other discount and is not valid on agreements of 6 months or less.

6. **Preferred Customer Coupon:** If I acquire ownership of my Leased Property, I will receive an Aaron's Preferred Customer Coupon. Presentation of this Coupon at any Aaron's Sales and Lease Ownership store will entitle me to a 50% discount off the Total Initial Payment, less the prorate amount, due under any new lease agreement. I understand that this discount cannot be combined with any other discount and is not valid for agreements of 6 months or less.

7. **90-Day Same As Cash:** If my payments are current, within 90 days of the Agreement Date, I may choose to purchase the Leased Property by paying either the Everyday Low Cash Price of $1,827.92 or the Advertised Special Price of N/A, whichever is lower, less the Lease portion of all previous payments (the Amount Due at Lease Signing, Monthly and Semi-monthly Payments less Aaron's Service Plus Fees and Sales/Use Taxes), plus any other Fees and Applicable Sales/Use Tax. I understand that Preferred Customer Coupons and New Agreement Discounts may not be used toward the Purchase Price. I may Exercise this option through October 21, 2009.

8. **Damage Waiver:** If my Leased Property is damaged or destroyed as a result of fire, flood, windstorm, or other Act of God ("Loss") and I give notice and satisfactory evidence of such Loss to Aaron's within 2 days of its occurrence, I will be relieved of any responsibility for the Loss.

9. **Merchandise Repair:** If your merchandise needs repair during the term of the Agreement, we will supply a loaner free of charge until we return your merchandise

10. **Limited Warranty:** In the event that I decide to purchase any of the Leased Property, Aaron's also will provide me with the following limited warranty which cover the Leased Property that I purchase under this Agreement.

**Who is covered?** This limited warranty extends only to me as the original purchaser of the Leased Property from Aaron's.

**What is covered?** This limited warranty covers any defects in materials or workmanship in any of the Leased Property purchased by me from Aaron's.

**When does coverage begin?** This limited warranty begins the day on which I complete the purchase of the Leased Property.

**How long does this warranty last?** This limited warranty lasts for the first sixty (60) days after I purchase the Leased Property from Aaron's. Coverage will terminate earlier if I sell or otherwise transfer the Leased Property.

**What will Aaron's do?** Aaron's will repair any purchased Leased Property that proves to be defective in materials or workmanship. In the event repair is not possible, in Aaron's judgment, Aaron's will replace the Leased Property with goods of comparable quality and condition (which may be goods which were previously leased).

**What is not covered?** This limited warranty does not cover batteries, rims or tires or any problem that is caused by abuse, misuse or theft of the Leased Property. This limited warranty does not cover any loss of or damage to the Leased Property resulting from fire, flood, windstorm, earthquake, or other acts of God and does not extend to any Leased Property or parts which have been lost or discarded, damaged by accident, installed or repaired by parties other than Aaron's personnel, improperly maintained or used in violation of the manufacturer's instructions, altered or modified without Aaron's authorization, or which bear serial numbers that have been removed, altered, defaced or rendered illegible. Also, consequential and incidental damages are not covered under this limited warranty. Some states do not allow the exclusion or limitation of incidental or consequential damages, so this limitation and exclusion may not apply to all purchasers.

**How to get service?** I must contact the Aaron's store where I was making my Renewal Payments at the time I purchased the Leased Property. Aaron's will pick-up and redeliver the Leased Property to a location that is within 15 miles of that Aaron's store at no additional cost to me.

**Other questions?** If I have any questions about this limited warranty, I must contact the Aaron's store where I was making my Renewal Payments at the time I purchased the Leased Property.

**Lifetime Reinstatement Plan:** After the minimum lease term is complete, I may return the Leased Property at any time to the Aaron's store at which my payments were made and take advantage of Aaron's Lifetime Reinstatement Program. This program allows me to reinstate my Agreement without losing any of my rights or options by paying all renewal payments and other charges that are owed. If I choose to reinstate my Agreement, Aaron's will provide me with either the same Leased Property or substitute property of comparable quality, age and condition. I understand that this lifetime reinstatement is only available at the Aaron's store where I was doing business and where I returned the Leased Property. I further understand that the Lifetime Reinstatement Program does not include seasonal items, including but not limited to, air conditioners and lawn tractors.

All warranties implied by state law (including any implied warranties of merchantability or fitness for a particular purpose) are expressly limited to the warranties set forth above. Some states do not allow limitations on how long an implied warranty lasts, so the time limitation set forth above may not apply to all purchasers. I understand that the foregoing limited warranty is the exclusive warranty offered by Aaron's with respect to any Leased Property which I purchase under this Agreement and is in lieu of all other warranties, guaranties, agreements or similar obligations of Aaron's (express or implied) with respect to the repair or replacement of any Leased Property after I purchase it.

LESSEE_____  DATE: ___/___/___   AARON'S REPRESENTATIVE _____

**Delivery Date:** The merchandise you have ordered is promised for delivery to you on or before _____. If the merchandise ordered by you is not delivered by the promised delivery date, Aaron's must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date.

**Late Payment, Return Check, and In-Home Collection Fees:** If a payment is 10 days late, I must pay a Late Charge of $10.00; if my check is returned to Aaron's for any reason, I must pay a Return Check Charge of $15.00; if Aaron's must come to my home to collect a Payment, I must pay an In-Home Collection Charge of $10.00. I ssly agree to these other fees, as applicable.

**Optional Benefits:** (initial one of the following three paragraphs)

**Service Plus Enrollment:** By signing my initials below, I acknowledge that I have chosen to enroll in the Aaron's Service Plus Program. My Amount Due at agreement signing and each Monthly or Semi-Monthly Payment will include the Service Plus Fee disclosed above. This Fee entitles me to receive all benefits provided by the Aaron's Service Plus Program as long as this Agreement is in effect and I am current in making my Payments. These benefits are explained in the Aaron's Service Plus Program Addendum, a copy of which has been given to me and is part of this Agreement. I understand that I can withdraw from the Aaron's Service Plus Program at any time by notifying the Aaron's store where I make my Lease payments. If I choose to withdraw from the Aaron's Service Plus Program before the last day of my Lease Term or Renewal Term, as applicable, I agree to pay to Aaron's a $50 delivery charge if the Leased Property was delivered to me by Aaron's. _____ (my initials here)

**Delivery Only:** By signing my initials below, I acknowledge that I do not want to enroll in the Aaron's Service Plus Program. I will not be entitled to any benefits provided under the Aaron's Service Plus Program. By signing my initials below, I acknowledge that I have chosen to have Aaron's deliver the Leased Property, and I agree to pay to Aaron's a $50 delivery charge that is reflected in the Amount Due at Lease Signing disclosed above. _____ (my initials here)

**No Service Plus or Delivery:** By signing my initials below, I acknowledge that I do not want to enroll in the Aaron's Service Plus Program or choose the separate delivery only charge. I will not be entitled to any benefits provided under the Aaron's Service Plus Program or delivery of the Leased Property by Aaron's. I understand that by choosing this option, I will be responsible for any and all damage to or theft or loss of the Leased Property arising out of the transportation or delivery of the Leased Property, up to the fair market value of the Leased Property. _____ (my initials here)

**Risk of Loss and Damage:** I agree that I am responsible for, and must pay, the fair market value of, the Leased Property if and as of the time it is lost, stolen, damaged beyond repair, or destroyed from any cause, normal wear and tear excepted. I agree that the Leased Property is not currently damaged (except ordinary wear and tear, if previously leased).

**Maintenance:** Other than repairs resulting from damage, Aaron's will maintain the Leased Property in good condition as long as I am leasing it, and I agree to allow only Aaron's to perform all repairs.

**Warranty:** If I purchase the Leased Property, in addition to any limited warranty that is included in the Aaron's Service Plus Program (if chosen above), Aaron's will transfer any unexpired manufacturer's warranty to me if allowed to do so by the terms of the warranty. Otherwise, Aaron's makes no warranties, express or implied, with respect to the Leased Property and specifically disclaims any warranties of fitness for a particular purpose or merchantability. In certain states this limitation may not apply to you.

**Termination:** I can terminate this Agreement without penalty at any time after expiration of the Lease Term by surrendering or returning the Leased Property in good repair and paying all Payments and other fees through the date of surrender or return. I agree that there is no refund if I return or surrender the Leased Property before the end of a Renewal Term.

**ibited Acts:** I will not grant a security interest in or otherwise pledge, pawn, attempt to sell or otherwise dispose of the Leased Property or move it from the address above without written authorization from Aaron's.

**Default and Right to Take Possession:** If I fail to pay the Total of Payments or if I fail to return or surrender the Leased Property when due, or if I breach any of my other obligations, I will be in default of this Agreement and my right to retain possession of the Leased Property will automatically terminate. In such event, Aaron's will be entitled to immediate possession of the Leased Property, wherever located. I will remain liable for any unpaid portion of the Total of Payments and for the amount of any unpaid portion of any Payment that is due after the termination of the Lease Term up to the fair market value of the Leased Property, until I return or surrender it to Aaron's in its present condition, normal wear and tear excepted. I also will be liable for all costs of collection and repossession, including reasonable attorney's fees, to the extent allowed by law.

**NOTICE**

DO NOT SIGN THIS AGREEMENT IN BLANK. YOU ARE ENTITLED TO A COPY OF THE AGREEMENT AT THE TIME YOU SIGN. KEEP IT TO PRESERVE YOUR LEGAL RIGHTS. BY SIGNING THIS AGREEMENT, YOU ARE ACKNOWLEDGING THAT YOU HAVE READ AND RECEIVED A COMPLETE AND SIGNED COPY OF THE AGREEMENT.

LESSEE_____   DATE: ____/____/____   AARON'S REPRESENTATIVE _____

LESSEE_____   DATE: ____/____/____                    DATE: ____/____/____

Agreement Number: 5599 - 8.9.4  (FD:08/01/03  PD:07/23/09-) - (C0996)

THE REST OF THIS PAGE IS INTENTIONALLY BLANK

AGREEMENT TO ARBITRATE DISPUTES

If a dispute arises under or relates to this Agreement or to the Leased Property described in this Agreement, the sole procedure to resolve the dispute shall be binding independent arbitration. If you intend to submit any dispute to arbitration, you must notify Aaron's in writing at AARON RENTS, INC., ATTN: LEGAL DEPARTMENT, 309 EAST PACES FERRY ROAD NE, ATLANTA, GA 30305. Arbitration shall proceed by each party selecting an arbitrator of its choice and arbitrators together then selecting a third arbitrator who, with the selecting arbitrators, shall constitute a panel of three. All decisions of the panel shall be made simple majority and the parties will be bound by decisions of the panel, which shall be final. Either party may enter judgment on any award rendered by the arbitrator in any court of competent jurisdiction. The arbitrator shall not be permitted to award punitive damages. Aaron's will pay the filing fee if you want to file an arbitration claim against us. No regulatory order or requirement of a governing regulatory agency may be subject to such arbitration unless expressly permitted by that agency.

Nothing in this Agreement shall prevent Aaron's from pursuing judicial or nonjudicial relief to recover its property or to get and enforce a money judgment for its damages due to your failure or refusal to return Aaron's property. If Aaron's files suit to recover its property or for money damages, such suit is not intended as a waiver of the right of any party to compel arbitration of any other dispute arising under this Agreement, including any counterclaims you might have against Aaron's. If Aaron's files such a suit, you can have the dispute arbitrated if Aaron's receives written notice from you of your desire to do so on or before the date your answer or other response is due in the court where we filed suit.

BY AGREEING TO THIS ARBITRATION, YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL.


LESSEE_____   DATE: ____/____/____   AARON'S REPRESENTATIVE _____

LESSEE_____   DATE: ____/____/____                    DATE: ____/____/____

Agreement Number: 5599 - 8.9.4  (FD:08/01/03  PD:07/23/09-) - (C0996)


THE REST OF THIS PAGE IS INTENTIONALLY BLANK

# EXHIBIT C

Appended to:
Class Action Complaint and Jury Demand
*Korrow vs. Aaron's Inc., et als.*
Docket No.: MID-L-_____-10





# EXHIBIT D

Appended to:
Class Action Complaint and Jury Demand
*Korrow vs. Aaron's Inc., et als.*
Docket No.: MID-L-_____-10

```
************************************
***********************************

        Margaret Follow
AARON'S SALES AND LEASE OWNERSHIP
         ADDRESS REDACTED
C0996
        REDACTED
DATE: 07/21/09  TIME: 3:20:49 pm
         ADDRESS REDACTED
RECEIPT # 30077

.........

                    THANK YOU FOR YO
UR PAYMENT!

                            Next Due
  Pay Out   Payments
  Agreement #       Amount Paid    Date
    Date;   Remaining  Frequency ____

_____  _____ _____

  4991         $    0.00    08/01/09
   02/15/10     0.50    Monthly
  5599         $   240.00   09/15/09
   08/01/11    22.50    Monthly
90 Days Same As Cash Expires : 10/21/09

  Total        $   240.00

Method of Payment  Amount Tendered  Amoun
t Paid    Change Due _____ ___

   Cash          $   240.00    $
240.00    $    0.00



              **YOU CAN NOW PA
Y ONLINE**

                          GO TO

                       SHOPAARONS.C
OM/VIP
                          Thank Yo
u!

************************************
***********************************
```

# EXHIBIT E

Appended to:
Class Action Complaint and Jury Demand
*Korrow vs. Aaron's Inc., et als.*
Docket No.: MID-L-_____-10

FORM A
SMALL CLAIMS COMPLAINT (Contract, Security Deposit, Rent, or Tort)

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
SPECIAL CIVIL PART

Attorney for Plaintiff (if any) _____

Address _____

_____

Telephone No. _____

County: _Mercer_

Address: _175 S. Broad St (8055)_
_Trenton, NJ   08650_

Telephone No. _609-571-4490_

From Plaintiff:
Name: _Aaron's Sales + Lease_

Address: _1240 N Olden Ave_
_Ewing, NJ 08138_
Telephone No. _609-912-0048_

To Defendant:
Name: _Margaret Karrow_

Address: REDACTED
REDACTED

Telephone No. REDACTED    P

SMALL CLAIMS SECTION
CIVIL ACTION
COMPLAINT

Check One – See Instruction A for Form A
[x] Contract
[ ] Security Deposit
[ ] Rent
[ ] Personal Injury or Property Damage (other than motor vehicle)

COMPLAINT (See Instruction B for form A)

Demand: $ _3,000.00_    plus costs.
Type or print the reasons you, the Plaintiff(s), are suing the Defendant(s):

_Defendant failed to uphold terms of lease agreement_
_making only 2.5 of 24 required monthly payments of 135.84_
_Also refused to return merchandise_

(You may attach more sheets if you need to.)

IMPORTANT: Plaintiffs and defendants must bring all witnesses, photos, and documents, and other evidence to the hearing. Subpoena forms are available at the Clerk's office to require the attendance of witnesses.

At the trial Plaintiff will need:
An Interpreter    [ ] yes [x] no    Indicate Language: _____
An accommodation for disability    [ ] yes [x] no    Indicate Disability: _____

I certify that the matter in controversy is not the subject of any other court action or arbitration proceeding, now pending or contemplated, and that no other parties should be joined in this action.

Date _8/11/09_

_____
Your Signature

_____
Your Name (Typed or Printed)

FORM 9
SMALL CLAIMS SUMMONS AND RETURN OF SERVICE-PAGE 2

Plaintiff or Plaintiff's Attorney Information:
Name: Adam's Sales & Lease
Address: 1240 N2 Alden Ave
Ewing  NJ  08638
Phone: (609) 912 - 0040

Superior Court of New Jersey
Law Division, Special Civil Part
Mercer                           County
(PO  S. Broad St  (Building))
Trenton, NJ  08650
(609) 571 - 4990

Adams Sales & Lease  ~~FILED~~  Docket Number: SC-1580-09
                                 (to be provided by the court)

versus          DEC 3 1 2009

Margaret Korrow

SUPERIOR COURT - NJ  Civil Action
SPECIAL CIVIL COURT

SUMMONS

Defendant Information:                    (Check one): ✔ Contract or ___ Tort

Name: Margaret Korrow
Address: REDACTED         Demand Amount:  $ 3,000
         REDACTED         Filing Fee:     $ 22
Phone:   REDACTED         Service Fee:    $
                          Attorney's Fees: $
                          Total:          $ 3,025

YOU MUST APPEAR IN COURT ON THIS DATE AND TIME: 2-5-10  at
I (X)              a.m./p.m. OR THE COURT MAY RULE AGAINST YOU. REPORT TO:

1-B

Date Served: _____

RETURN OF SERVICE (FOR COURT USE ONLY)
COURT OFFICER'S RETURN OF SERVICE
IF SERVED BY COURT OFFICER
Docket Number: _____
Date: _____  Time: _____  WM ___ WF ___ BM ___ BF ___ OTHER _____
HT ___ WT ___ AGE ___ MUSTACHE ___ BEARD ___ GLASSES _____
NAME: _____  RELATIONSHIP: _____
Description of Premises: _____

I hereby certify the above to be true and accurate.
                                                    Court Officer

RETURN OF SERVICE IF SERVED BY MAIL (for Court Use Only)
_____ hereby certify that on _____ I mailed a copy of the
within summons and complaint by regular and certified mail return receipt requested.

                                          Employee Signature

10