**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                :
MARGARET KORROW, on behalf of        :
herself and others similarly situated,       :
                                                :
          Plaintiff,                            :
                                                :
          v.                                    :          Civil Action No. 10-6317 (MAS) (LHG)
                                                :
AARON'S INC. and JOHN DOES 1-25,      :                    **OPINION**
                                                :
          Defendants.                           :
_____:

**SHIPP, District Judge**

      This matter comes before the Court on several motions. Defendant Aaron's Inc. ("Defendant" or "Aaron's") moves to appeal the June 30, 2014 Order ("Order") of the Honorable Lois H. Goodman, U.S.M.J. ("Magistrate Judge" of "Judge Goodman") (ECF No. 99), Plaintiff Margaret Korrow ("Plaintiff" or "Ms. Korrow") filed an opposition (ECF No. 102), and Defendant replied (ECF No. 105). In addition, Defendant moves to stay the issuance of class notice pending resolution of its appeal (ECF No. 100), Plaintiff filed an opposition (ECF No. 103), and Defendant replied (ECF No. 106). Defendant also moves to decertify the class (ECF No. 110), Plaintiff filed an opposition (ECF No. 111), and Defendant replied (ECF No. 112). By separate motion, the New Jersey Civil Justice Institute ("NJCJI") sought leave to file a brief in support of Defendant's Motion to Decertify the Class (ECF No. 113), Plaintiff filed an opposition (ECF No. 114), and NJCJI replied (ECF No. 115). Plaintiff also moves separately for approval of the class notice and plan notice (ECF No. 101), Defendant filed an opposition (ECF No. 104), and Plaintiff replied (ECF No. 107). The Court has carefully considered the submissions from the parties and from

NJCJI and decides the matters without oral argument pursuant to Local Civil Rule 78.1.  For the reasons set forth below, and other good cause shown, the Court denies Defendant's Appeal of the Magistrate Judge's Denial of the Motion for Leave to Amend (ECF No. 99), Defendant's Motion to Stay Issuance of the Class Notice Pending Resolution of Defendant's Appeal of the June 30, 2014 Order (ECF No. 100), Defendant's Motion to Decertify the Class (ECF No. 110), and NJCJI's Motion for Leave to File a Brief as Amicus Curiae (ECF No. 113).  Furthermore, the Court grants in part and denies in part Plaintiff's Motion for Approval of the Class Notice and Plan of Notice.  (ECF No. 101.)

## I.      Background & Procedural History[1]

Ms. Korrow, on behalf of herself and a putative class, brought suit against Defendant alleging that certain fees and charges that Defendant imposed on the class through its rent-to-own contracts violated the New Jersey Truth in Consumer, Contract, Warranty and Notice Act and the New Jersey Consumer Fraud Act.  Defendant removed this action pursuant to 28 U.S.C. § 1332 (d)(2).  After the case was removed, Defendant filed a motion to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion was denied, and on October 10, 2011, Defendant filed an answer to the Complaint.  (ECF No. 25.)  This answer did not include a counterclaim.  (*Id.*)  Thereafter, on February 3, 2012, with consent from both Plaintiff and the Magistrate Judge, Defendant filed an Amended Answer that contained a single breach of contract counterclaim against Plaintiff for her alleged failure to make payments under her rent-to-own contract with Defendant.  (ECF No. 33.)

---

[1] The Court assumes familiarity with the facts, which are provided in this Court's previous opinion. ("Mem. Op.", ECF No. 78.)  Thus, the Court includes only the facts relevant to the pending motions.

On February 15, 2012, the Magistrate Judge issued a scheduling order, which provided, among other things, that "[a]ny motion to amend the pleadings or join new parties must be filed with leave of Court and filed no later than **April 13, 2012** and made returnable on **May 7, 2012**." (ECF No. 35.)  Neither party moved to amend its pleadings during this time, and, pursuant to the scheduling order, the parties undertook class certification discovery.  Following the deadline for class certification discovery, Defendant filed a preemptive motion to deny class certification. (ECF No. 45.)  Plaintiff opposed the motion and cross-moved to certify the class based on her New Jersey Truth in Consumer, Contract, Warranty and Notice Act claim and two subclasses based on her New Jersey Consumer Fraud Act claim.  (ECF No. 52.)

On July 31, 2013, the Court granted Plaintiff's cross-motion and certified the Class and two Subclasses.  (ECF No. 77.)  Thereafter, Defendant petitioned for permission to appeal the Court's class certification order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. (Decl. of Michael McDonald ("McDonald Decl.") Ex. A, ECF No. 85-3.) The Third Circuit denied Defendant's petition on September 12, 2013.

On October 4, 2013, Defendant filed a motion for leave to amend its counterclaim.  (ECF No. 90.)  Defendant's proposed amendment expanded upon its previously asserted counterclaim in two significant respects.  First, it added a breach of contract counterclaim against all class members who failed to make payments pursuant to their lease agreements. (Def.'s Moving Br. for Leave to Amend Ex. A ("Proposed Am. Countercls.") ¶¶ 23-24, ECF No. 90-1.)  Second, it added counterclaims for quantum meruit and unjust enrichment against Plaintiff as well as "Certain Class Members."  (*Id.* ¶¶ 25-41.)  While Defendant's motion for leave to amend was pending, the Magistrate Judge asked Defendant how many Class members and Subclass members would be

subject to the proposed counterclaims.  (June 30, 2014 Order ("MJ Order") at 3 n.2, ECF No. 98.)

In correspondence, dated June 13, 2014, Defendant stated:

> With respect to potential counterclaim defendants (not including Plaintiff Korrow against whom there is already a counterclaim), we believe that there are 8,945 additional class members who would be subject to the proposed counterclaim[s].  Though we have confidence that this figure is reasonably accurate, this number is in fact an estimate based upon high level analysis of the data performed by Aaron's . . . .

(June 13, 2014 Letter, ECF No. 96.)

On June 30, 2014, the Magistrate Judge denied Defendant's Motion to Amend.  (MJ Order 20, ECF No. 98.)  In her Order, Judge Goodman stated that the proposed counterclaims would put the court:  (1) "in the untenable position of assessing damages against absent parties that were never given the opportunity to individually oppose the counterclaims[;]" and (2) at risk of opening a "Pandora's box . . . given that Aaron's estimates there would be counterclaims against approximately 9,000 absent class members." (*Id.* at 14.)  Accordingly, the Magistrate Judge declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2), which provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).  Defendant appeals this Order (ECF No. 99) and, by separate motions, moves to stay the issuance of class notice pending resolution of its appeal (ECF No. 100) and moves to decertify the class (ECF No. 110).

## II.   **Defendant's Appeal of the Magistrate Judge's Decision**

Defendant does not appeal the Magistrate Judge's factual findings, rather it appeals only her legal determination.[2]  Specifically, Defendant argues that the Magistrate Judge's determination was contrary to law for four reasons: "(1) leave to amend was denied pursuant to § 1367(c)(2) but § 1367(c)(2) is not applicable to cases such as this one where subject matter jurisdiction is based on diversity; (2) even if § 1367(c)(2) was applicable the court erred by failing to conduct a comparative, qualitative analysis of the types of proof required by each claim; and (3) the court erred in concluding that counterclaims were not compulsory within the meaning of Rule 13," and (4) the proposed amendments to the counterclaim asserted against Ms. Korrow were timely. (Def.'s Moving Appeal Br. 1-3, 38, ECF No. 99-1.)   For the reasons that follow, the Court disagrees with Defendant.

When reviewing a magistrate judge's denial of a motion to amend a pleading, pursuant to Local Civil Rule 72.1(c)(1)(A), the Court "shall . . . set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A).   "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law.  Legal conclusions on a non-dispositive motion are therefore reviewed *de novo*."  *Dr. Reddy's Labs. Ltd. v. MDS, Inc.*, No. 09-2398, 2012 WL 1033379, at *1 (D.N.J. Mar. 27, 2012) (internal citations omitted).

### A.   **Section 1367(c)(2) is Applicable to Diversity Actions**

Citing the Third Circuit's decision in *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995), Defendant argues that "the entire rationale for declining jurisdiction under

---

[2] (Def.'s Moving Appeal Br. 9 ("Here, the Magistrate Judge's ruling that § 1367(c)(2) allows the Court to decline the exercise supplemental jurisdiction, where there are no federal claims over which pendent state law claims might predominate, is a legal conclusion . . . ."), ECF No. 99-1.)

§1367(c)(2) is absent" here.  (Def.'s Moving Appeal Br. 16.)   In *Borough of West Mifflin*, the Third Circuit discussed the application of §1367(c)(2) to the plaintiff's state law claims in a case that was removed on the basis of federal question jurisdiction. 45 F.3d at 789.  Characterizing this section as a "limited exception" to the operation of the doctrine of pendent jurisdiction, the court stated that this section should be invoked only where "an important countervailing interest [is] to be served by relegating the state claims to the state court."  *Id.*  Contrary to Defendant's characterization of this decision, however, the Third Circuit did not hold that § 1367(c)(2) is inapplicable to diversity cases.  *See id.* at 790 ("[W]e do not foreclose the parties from hereafter arguing, and the district court from hereafter considering, the issue posed by § 1367(c)(2) . . . .").  In addition, district courts in this Circuit, as well as the First Circuit and district courts in other Circuits, have found that § 1367(c)(2) is applicable to diversity cases.[3]

Here, the Magistrate Judge found that permitting amendment would put the Court in the "untenable position of assessing damages against absent parties that were never given the opportunity to individually oppose counterclaims" and that it had the risk of converting the case into a "Pandora's Box" of separate state collection actions.  (MJ Order 14.)  The Court finds that concerns about absent parties and expending judicial resources to act essentially as state collection actions are important countervailing interests that are served by relegating the state law

---

[3] *See Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC*, 730 F.3d 67 (1st Cir. 2013) (discussing applicability of § 1367(c)(2) to non-diverse claims in a diversity suit); *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co*., No. 07-10639, 2009 WL 427280, at *15-16 (S.D.N.Y. Feb. 23, 2009) (same); *Gandolfo v. U-Haul Int'l., Inc.*, 978 F. Supp. 558, 562 (D.N.J. 1996) (same); *see also Shah v. Hyatt Corp*., 425 F. App'x 121, 124-25 (3d Cir. 2011) (reversing district court's remand of diversity claim pursuant to § 1367 (c)(1), (c)(2), and (c)(4), but stating that it found "no error" in district court's decision to remand the claims over which it had supplemental jurisdiction based on the factors in § 1367 (c)).

counterclaims to state court.[4] Accordingly, the Court finds that the Magistrate Judge's decision is not contrary to *Borough of West Mifflin*.

Furthermore, the cases on which Defendant relies to argue that courts have rejected the application of § 1367(c)(2) to diversity actions are inapposite, because in those cases the courts found that there were many common issues of law and fact between the claims over which the court had original jurisdiction and the state law claims. *See, e.g.*, *Siegfried v. Allegheny Ludlum Corp.*, No. 09-125, 2009 WL 1035001, at *15 (W.D. Pa. Mar. 25, 2009) ("In this case . . . the exact same state law will govern both the naval claim and the non-naval claims and parallel cases would be created [if the court declines to exercise supplemental jurisdiction]."); *Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc*., 659 F.3d 234, 246 (2d Cir. 2011) ("Because the FLSA and the NYLL use a similar standard for making such a determination, and because each set of claims arise from the same set of operative facts, a determination as to the FLSA claims may decide the Plaintiffs' NYLL claim as well."). Here, the proposed counterclaims are not dependent on the same state law or legal standard as the class claims. Plaintiff's Complaint alleges, inter alia, that Aaron's "Service Plus" fees, returned check fees, "In-Home Collection" fees, and interest fees were prohibited by certain New Jersey consumer protection statutes. (Compl. ¶¶ 100, 104-105, 107.) Defendant's

---

[4] *See, e.g.*, *Hyman v. WM Fin. Servs.*, No. 06-4038, 2007 WL 1657392, at *5 (D.N.J. June 7, 2007) (declining to exercise supplemental jurisdiction pursuant to § 1367(c)(2) where resolving the state law claims would "require the Court to engage in a journey of law and fact far afield from the issue raised" in the claim over which it had original jurisdiction); *Lackman v. Recovery Serv. of N.J., Inc.*, No. 06-216, 2006 WL 3485988, at *4 (D.N.J. Nov. 29, 2006) (declining to exercise supplemental jurisdiction pursuant to § 1367(c)(2) because allowing separate state claims to proceed "will not be fair to parties"); *Miletta v. United States*, No. 02-1349, 2005 WL 1318867, at *15 (D.N.J. May 27, 2005) (dismissing cross-claim pursuant to § 1367(c)(2) because the court had expended "little if any judicial resources relating to the cross-claim," thus "there would be no significant duplication of effort if this claim were pursued elsewhere" and "resolution of this cross-claim would delay entry of final judgment on the underlying personal injury action").

proposed counterclaims do not implicate these state statutes.  Rather, the proposed counterclaims allege individual breach of contract claims against each class member.

Accordingly, the Magistrate Judge's decision to apply § 1367(c)(2) to this diversity action was not contrary to law.

## B.     The Magistrate Judge's Application of § 1367(c)(2) was Not Contrary to Law

Defendant also argues that even if §1367(c)(2) could apply to the proposed counterclaims, the Magistrate Judge erred in applying it by doing the following:  (a) shifting the burden of proof to the Defendant; (b) failing to consider that the proofs implicated by the proposed counterclaims are qualitatively the same type of proofs that will be raised by the existing counterclaim (against Plaintiff) and existing set-off and recoupment affirmative defenses; and (c) conflating the predominance inquiry under Rule 23 with the "substantially predominates exception in §1367(c)(2)."  (Def.'s Moving Appeal Br. 20-21.)  For the reasons discussed below, the Court disagrees with Defendant.

### 1.     Predominance Factor in § 1367(c)(2) was Properly Applied

Taking Defendant's arguments in reverse order, Defendant argues that the Magistrate Judge erred in applying the predominance factor in §1367(c)(2) because the court looked at the number of counterclaims rather than the nature of those claims to find that the proposed counterclaims substantially predominate over the claims over which the court has original jurisdiction.  (Def.'s Moving Appeal Br. 25-30.) Review of the Magistrate Judge's decision reveals, however, that the court properly considered the quantity of proof required by each claim in finding that the proposed counterclaims substantially predominate over the class claims.

This Circuit has held that the quantity of proof required by each claim is relevant to the application of § 1367(c)(2).  *See Borough of W. Mifflin*, 45 F.3d at 789.  In determining whether

to decline to exercise supplemental jurisdiction pursuant to § 1367(c)(2), the Third Circuit analyzed three factors:  (1) the "quantity of evidence supporting the[] state law claims" which would not be relevant to the claims over which the court had original jurisdiction; (2) the comprehensiveness of the remedy sought; and (3) the scope of the issues raised.  *Id*.  Here, the Magistrate Judge also applied these factors.  Specifically, the Magistrate Judge found that the proposed counterclaims substantially predominate over the class claims because "the counterclaims would require proof of additional elements including:  whether the class members breached their agreements; whether they made their monthly payments; whether they paid late fees; whether their checks were returned due to insufficient funds; whether they destroyed or misappropriated furniture; whether Defendant performed its obligations under the agreements; and whether Defendant preserved its rights."  (MJ Order 14.)  In addition, the court also considered the "comprehensiveness of the remedy sought" and found that "[t]he remedies implications are similarly formidable and fact intensive."  (*Id*.)  Therefore, contrary to Defendant's assertion, the court did not simply focus on the "number of counterclaims rather than the nature of those claims." (Def.'s Moving Appeal Br. 29.)  Accordingly, the Magistrate Judge did not err in analyzing the factors relevant to § 1367(c)(2).

## 2. The Affirmative Defenses Do Not Preclude Finding that the Proposed Counterclaims Predominate over the Class Claims

Defendant next argues that it is "not possible for the proposed counterclaims to substantially predominate over the claims already in the case," because "the Court is already exercising jurisdiction over [Defendant's] set-off and recoupment affirmative defenses."  (Def.'s Moving Appeal Br. 24.)  Specifically, Defendant argues that the factual and legal issues necessary for determining its proposed counterclaims are already in the case, because those same issues are implicated by its affirmative defenses.  (*Id*.)  The Court disagrees with Defendant.

9

As the Court stated in its decision on Defendant's motion to deny class certification, Defendant's affirmative defenses pertain to damages *not* liability.  (Mem. Op. 20.)  As such, the affirmative defenses are distinct from the proposed counterclaims, and do not pose the same threat of becoming the "real body of the case" or implicate the same concerns with respect to judicial economy and fairness to litigants.  *See Borough of W. Mifflin*, 45 F.3d at 789; *cf. Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 992 (3d Cir. 1984) ("Since the defensive set-off by definition is only determined if the plaintiff wins on the underlying claim, adjudicating the set-off claim places little additional strain on judicial resources.").  In fact, the individual damage issues implicated by the set-off and recoupment defenses can be determined *after* class-wide liability is determined.  *See Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (granting certification where "individual damage determinations could be made. . . at a separate phase of the trial, but the class phase could resolve the central issue of liability for the alleged misrepresentations and omissions.").

### 3.     The Magistrate Judge Did Not Err in Finding the Proposed Counterclaims Predominate the Class Claims

Defendant also argues that the Court erred by shifting the burden of proof to Defendant to prove that § 1367(c)(2) did not apply to its proposed counterclaims.  In support of this assertion, Defendant relies on the following single conclusory sentence in the Magistrate Judge's opinion: "For these reasons, the Court finds that Defendants [sic] have not met their burden of establishing that the proposed counterclaims against class plaintiffs would not predominate over the plaintiffs' class action claims."  (MJ Order 14.)   The burden of proof, with respect to supplemental jurisdiction, is limited to proving that supplemental jurisdiction exists under § 1367(a).  *See Thomas v. Christy*, No. 13-2560, 2013 WL 1792398, at * 3 (D.N.J. April 25, 2013) (noting that the party asserting a state law claim in federal court must establish a basis for supplemental

10

jurisdiction).  The Court agrees that Defendant did not have a burden to prove that § 1367(c)(2) was *not* applicable to the proposed counterclaims.  Nonetheless, as discussed above, after reviewing the Magistrate Judge's application of §1367(c)(2), the Court finds that the application of §1367(c)(2) to the proposed counterclaims was not contrary to law.  Accordingly, even if the Magistrate Judge improperly shifted the burden of proof to Defendant, this error was harmless, because the Court reaches the same conclusion without such burden shifting.

### C.   The Magistrate Judge Did Not Err in Concluding that the Proposed Counterclaims Were Not Compulsory

In addition, Defendant argues in the alternative that its proposed counterclaims are compulsory, and thus do not require an independent basis for jurisdiction.  (Def.'s Moving Appeal Br. 31-38.)  For the reasons discussed below, the Court disagrees with the Defendant.

"Rule 13 establishes two kinds of counterclaims: compulsory and permissive."  *Chen v. Century Buffet & Rest.*, No. 09-1687, 2011 WL 2600715, at *1 (D.N.J. June 29, 2011) (citing Fed. R. Civ. P. 13(a)).  A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  *Id.* (citing Fed. R. Civ. P. 13(a)(1)(A)).  "A compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim."  *Id.* (citing *Ambromovage*, 726 F.2d at 988).  "A permissive counterclaim, on the other hand, requires a basis of federal jurisdiction independent of the opposing party's claim."  *Id.* (citing *Aldens, Inc. v. Packel*, 524 F.2d 38, 52 (3d Cir. 1975)).  "A permissive counterclaim is broadly defined to include 'any claim that is not compulsory.'"  *Id.*  (citing Fed. R. Civ. P. 13(b)).

Here, the Magistrate Judge rejected Defendant's contention that the proposed counterclaims "arise from the same transaction or occurrence as the class members' claims and, consequently, are compulsory counterclaims."  (MJ Order 16-17.)  In particular, the Magistrate

Judge found that even though the class claims and the proposed counterclaims were "rooted in the same agreements," that fact was not enough to render the proposed counterclaims compulsory. (*Id.* at 16.)  The Court agrees.

"It is well-established that the words 'transaction or occurrence' in Rule 13(a) are not interpreted literally." *Matter of Penn Cent. Transp. Co.*, 419 F. Supp. 1376, 1383 (E.D. Pa. 1976). In *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, the Third Circuit explained that a counterclaim is compulsory "[w]here multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties . . . ." 286 F.2d 631, 634 (3d Cir. 1961) (citations omitted).  Thus, courts have found that a counterclaim may be permissive when the claim and counterclaim do not involve the same factual or legal issues, even if the claims are based on the same transaction or agreement. *See, e.g.*, *Zeltzer v. Carte Blanche Corp.*, 414 F. Supp. 1221, 1224 (W.D. Pa. 1976) ("I find that the respective claims are 'offshoots' of the same basic transaction, but not the 'same basic controversy between the parties,' and that separate trials on each distinct claim will not involve a 'substantial duplication of effort and time by the parties and the courts.'") (quoting *Great Lakes Rubber Corp.*, 286 F.2d at 634); *Gammons v. Domestic Loans of Winston-Salem, Inc.*, 423 F. Supp. 819, 821 (M.D.N.C. 1976) ("Although the claim and counterclaim arise from the same underlying business transaction, each raise [sic] issues of fact and law starkly different.").

Here, the class claims concern only the legality of the contracts themselves without any regard to the performance of those contracts.  In contrast, the proposed counterclaims focus entirely on performance and "require proof of additional elements [which are not relevant to the class claims], including: whether class members breached their agreements; whether they made their monthly payments; whether they paid late fees; whether their checks were returned due to

12

insufficient funds; whether they destroyed or misappropriated furniture; whether Defendant performed its obligations under the agreements; and whether Defendant preserved its rights." (MJ Order 14.) Thus, the class claims and proposed counterclaims raise distinct issues of fact and law. Accordingly, the Magistrate Judge's finding that the proposed counterclaims were not compulsory pursuant to Rule 13 was not contrary to the law.

### D.  The Magistrate Judge Did Not Err in Denying Defendant's Motion to Amend Counterclaims Against Ms. Korrow

Finally, Defendant argues that the Magistrate Judge erred in denying Defendant's request for leave to add new factual allegations regarding other agreements that Ms. Korrow entered into with Defendant and counterclaims against Ms. Korrow for quantum meruit and unjust enrichment. (Def.'s Moving Appeal Br. 38-40.)   Specifically, Defendant argues that, prior to obtaining class certification, Plaintiff's Complaint asserted claims with respect to only her July 23, 2009 agreement with Defendant.  (*Id.* at 38-39.)  Following class certification, however, Defendant contends that it is "[p]resumably" Plaintiff's position "that now that the class has been certified, any other agreements that Plaintiff entered into with [Defendant] during the class period are the subject of the certified claims." (*Id.* at 39.)  Accordingly, Defendant seeks to assert counterclaims based on these other agreements.

As an initial matter, Defendant did not raise this argument before the Magistrate Judge.  On the contrary, Defendant argued that "Plaintiff . . . is not and cannot be prejudiced by the amended counterclaim because . . . it does not affect *her* in any way," and "[t]hat the amended counterclaim adds quantum meruit and unjust enrichment claims is of no moment because 'when an amendment puts no different facts in issue than did the original citation, reference to an additional legal standard is not prejudicial.'" (Def.'s Reply Br. for Leave to Amend 2-3, ECF No. 95 (quoting *Donovan v. Royal Logging Co.*, 645 F.2d 822, 827 (9th Cir. 1981).)  Thus, noting that the

Defendant "points to no new facts to justify its late request" and "concedes that its new counterclaims are premised on the same facts as its existing counterclaim," the Magistrate Judge found that Defendant had not shown good cause for amending its counterclaim against Ms. Korrow.  (MJ Order 19.)

Defendant does not offer any explanation, let alone good cause, for failing to raise the argument before the Magistrate Judge.  Accordingly, the Court finds that this argument was waived.  *See Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2002 WL 1754493, at *6 (D.N.J. July 30, 2002) ("[A]bsent good cause, the District Judge will not consider new arguments raised on appeal  that could have been presented to the Magistrate Judge . . ."); *Health Corp. of Am. v. N.J. Dental Ass'n*, 77 F.R.D. 488, 492 (D.N.J.1978) ("Since this argument was not presented to the Magistrate Judge for his consideration before decision, the court will not consider it now.").

Accordingly, as the decision was not contrary to law, the Court affirms the Magistrate Judge's denial of Defendant's motion for leave to amend the counterclaims.[5]

## III.    <u>Motion for Approval of the Class Notice and Plan of Notice</u>

Following certification of the class, Plaintiff moved for approval of the class notice and plan of notice.  (ECF No. 101.)  Plaintiff asserts that her proposed class notice and plan of notice should be approved because it meets the Rule 23(c)(2)(B) requirements that apply to class actions certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure and comports with due process in "providing the requisite information about the lawsuit and class members' rights to exclude themselves from this proceeding."  (Pl.'s Moving Notice Br. 1, ECF No. 101-2.)

---

[5] Defendant also makes a separate Motion to Stay Issuance of the Class Notice Pending Resolution of Defendant's Appeal of the June 30, 2014 Order Denying Leave to Amend.  (ECF No. 100.) Having decided Defendant's Appeal of the June 30, 2014 Order Denying Leave to Amend, Defendant's Motion to Stay Issuance of the Class Notice (ECF No. 100) is denied as moot.

Defendant, however, argues that the notices should not be approved because the class notice contains certain factual and legal inaccuracies and that the plan of notice is "prejudicial" and "too expensive." (Def.'s Opp'n Notice Br. 1, ECF No. 104.) For the reasons discussed below, the Court finds that the notices should be approved subject to the revisions described below.

### A.   <u>Adequacy of Class Notice</u>

Rule 23(c)(2)(B) governs class notice for classes certified under Rule 23(b)(3), and is applicable here. Rule 23(c)(2)(B) provides that:

> [f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances . . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In order to help courts comply with the requirements of Rule 23(c)(2)(B), the Rules Advisory Committee notes that the "Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms." Fed. R. Civ. P. 23(c) advisory committee's note. Here, Plaintiff's notice was drafted based upon the Federal Judicial Center's notice forms. Plaintiff's proposed long-form class notice provides the following description of the class action:

> A consumer sued Aaron's, Inc. claiming that certain fees in its rent-to-own contracts violate several New Jersey laws. Her lawsuit demands money for herself and certain other New Jersey consumers related to certain fees charged by Aarons. [sic] These fees are (1) a "Service Plus" fee, (2) a "Prorated amount" charge paid with the first payment due, and (3) a "Return Check" fee charged if a check is returned "for any reason."

(Certification of Michael Quirk ("Quirk Cert.") Ex. A ("Proposed Long-Form Notice"), ECF No. 101-4.)  In addition, it describes the certified class as "all persons who entered into a rent-to-own contract with Aaron's Inc. in New Jersey from March 16, 2006 to March 31, 2011," and it notes that Class members who paid "Prorated" or "Service Plus" fees are part of certified subclasses. (*Id.*)  The proposed long-form notice contains similar clear and concise descriptions of the class claims, defenses, right to obtain separate representation, time and manner for opting out, and "what happens if [a class member] do[es] nothing at all?"  (*Id.*)  The Court finds that these descriptions are clear and concise and easily understood. Likewise, the Court finds that the proposed short-form notice also clearly and concisely provides the information required by Rule 23(c)(2)(B). (Quirk Cert. Ex. B ("Proposed Short-Form Notice"), ECF No. 101-4.)  Accordingly, the Court finds that the notices satisfy Rule 23(c)(2)(B) and comport with due process.

Having found that the notices generally comply with the requirements of Rule 23(c)(2)(B) and due process, the Court now addresses Defendant's five specific objections to the language in the notices.  First, Defendant contends that the following statement in the long-form notice is false: "Everyone in the Class entered into a contract that included a 'for any reason' type of 'Return Check' fee."  (Def.'s Opp'n Notice Br. 5.)  The Court addressed this issue in its denial of Defendant's Motion to Strike the Declaration of Christopher J. McGinn. (ECF No. 77.)  Defendant moved to strike, inter alia, the statement in McGinn's declaration, that, upon review, all 36,016 versions of the Aaron's contract during the class period contained a check return fee. (Def.'s Motion to Strike Br. 6-7, ECF No. 63.)  The Court denied this motion.  (ECF No. 77.)  Defendant may not relitigate this issue by objecting to the notice. Accordingly, the Court finds that this statement may be included in the notice.

16

Second, Defendant contends that the description of the claims in the lawsuit in the proposed long-form notice is "incomplete and inaccurate" because it does not describe Defendant's counterclaims or set-off and recoupment defenses.  (Def.'s Opp'n Notice Br. 6.)  As discussed above, the Court denies Defendant's appeal of the dismissal of its proposed counterclaims.  Thus, with the exception of Ms. Korrow, Defendant does not have an affirmative claim for breach of contract against the class members. With respect to the set-off and recoupment defenses, these defenses are included in the notice.  The notice provides that: "Aaron's answers that some Class members owe it money and any money obtained from persons in this case should be reduced by the amount of the debt Aaron's claims" and "[a] class member's recovery of such damages may be subject to and reduced by any 'set off' defense . . . if Aaron's can prove that the Class Member owes it money."  (Proposed Long-Form Notice 5-6.)  Thus, the Court finds that the notice provides a complete an accurate description of the claims in the lawsuit.

Third, Defendant contends that linking the long-form notice to Plaintiff's brief in support of her motion for class certification is "inappropriate."  (Def.'s Opp'n Notice Br. 6.)  The Court agrees.  Class notice must be neutral and must avoid endorsing the merits of the claim.  *See Hoffman La–Roche v. Sperling*, 493 U.S. 165, 173 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.").  The one-sided presentation of arguments in Plaintiff's legal brief unfairly endorses the merits of the class claims.  Accordingly, the link to Plaintiff's brief should be removed from the notice.

Fourth, Defendant contends that the following statement in the long-form notice is inaccurate: "Any customer of Aaron's Inc. that is a business entity, a church, or a non-profit organization is NOT a member of the Class."  (Def.'s Opp'n Notice Br. 7.)  Specifically, Defendant

17

contends that the language should be revised to indicate that a person must have purchased or leased the property for *personal* use to be a class member. (*Id.*)  In granting Plaintiff's motion for class certification, the Court rejected the argument for an individualized inquiry as to each purchaser's intended use.  (Mem. Op. 10 ("The TCCWNA does not require individualized investigation into the particular use of products purchased for each individual consumer.").)  Thus, the description of the Class is accurate and does not need to be revised.

Fifth, Defendant contends that the proposed short-form notice does not provide the best notice that is practicable because it does not specify the amount that Defendant seeks in its counterclaim against Ms. Korrow and does not make reference to Defendant's set-off and recoupment defenses."  (Def.'s Opp'n Notice Br. 7-8.)  The Court finds that this information is unnecessary for the short-form notice.

Accordingly, subject to the removal of the link to the Plaintiff's brief in support of her motion for class certification, the Court approves the proposed notices.

**B.    Adequacy of the Notice Plan**

Pursuant to Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). Here, Plaintiff proposes to provide notice in the following eight ways: (1) direct mail; (2) e-mail message; (3) publication in three newspapers; (4) a press release to approximately 11,700 media points, including 5,700 U.S. news outlets and 6,000 websites; (5) mailings to 34 legal aid and pro bono program offices located within New Jersey; (6) a litigation-specific website; (7) a case-specific toll-free telephone number; and (8) a Google ad word campaign.  (Quirk Cert. Ex. C ("Proposed Notice Plan"), ECF No. 101-3.)  Defendant does not dispute, and the Court finds that notice via direct mail, e-mail message,

and publication are consistent with the requirements for providing the best notice that is practicable pursuant to Rule 23(c)(2)(B).  Defendant contends that the other forms of notice, however, are prejudicial and too expensive.

As an initial matter, excluding the case-specific toll-free telephone number, the four forms of notice that Defendant disputes – namely a press release, mailings to 34 legal aid and pro bono program offices, a litigation-specific website, and a Google ad word campaign – cost a total of $6,325.[6]  Compared to the approximately $88,000 to be spent on direct mailing, e-mail, and publications, which Defendant does not dispute, the Court finds that the additional approximately $6,000 is minimal.  Moreover, given that the Class is likely to include many transient individuals, the Court finds that these low-cost forms of notice may be more effective in reaching the proposed class members than direct mailing.  Accordingly, the Court finds Defendant's assertions that these forms of notice are "too expensive" unpersuasive.  With respect to the case-specific toll-free telephone number, which is estimated to cost approximately $28,332[7], given that the information that is provided by the toll-free telephone number could also be provided at a lower cost on the litigation-specific website, the Court finds that this expense is not reasonable.

Finally, the Court turns to Defendant's argument that the additional notice is prejudicial and harmful to its business reputation.  (Def.'s Opp'n Notice Br. 13-14.)  As noted above, given that the Class is likely to include many transient individuals, traditional forms of notice, such as direct mail or publications in regional newspapers, which are based on a class member's previous residence, may be ineffective.  For this reason, the Court finds that notice should also be distributed more broadly via electronic communications.  In permitting notice to be distributed more broadly,

---

[6] (Certification of Anya Verkhovskaya ("Verkhovskaya Cert.") ¶ 10, ECF No. 107-1.)

[7] *Id.*

the Court is, however, mindful of the risk of "unfairly publiciz[ing] yet unproven allegations about Defendant[] to [its] customers." *Owen v. W. Travel, Inc.*, No. 03-0659, 2003 WL 25961848, at * 1 (W.D. Wash. Dec. 13, 2003). Thus, weighing the likelihood of prejudice to Defendant against the need to provide the best notice practicable to the class members, the Court finds that the Google ad word campaign would be overly prejudicial here. The Court, however, finds that it is not unduly prejudicial to provide notice via a press release, case-specific website, and mailings to the 34 legal aid and pro bono program offices located within New Jersey. Accordingly, the Court approves the following six forms of class notice: (1) direct mail; (2) e-mail message; (3) publication in three newspapers; (4) a press release to approximately 11,700 media points; (5) targeted mailing to 34 legal aid and pro bono program offices in New Jersey; and (6) a litigation-specific website.

## IV.    Motion to Decertify the Class

By separate motion, Defendant moves to decertify the class. (ECF No. 110.) Pursuant to Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23 (c)(1)(C). Decertification is, however, an "'extreme step' particularly at a late stage in litigation, 'where a potentially proper class exists and can easily be created." *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012) (quoting *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)); *see also Chiang v. Veneman*, 385 F.3d 256, 268 (3d Cir. 2004) (characterizing decertification as a "drastic course"), *abrogated on other grounds by In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 n.18 (3d Cir. 2008). Thus, "[t]he party seeking to decertify a class action has the burden of showing 'changed circumstances' that would warrant the decertification of the class action." *Barkouras v. Hecker*, No. 06-0366, 2007 WL 4545896, at *1 (D.N.J. Dec. 19. 2007) (quoting *Muise v. GPU, Inc.*, 371 N.J. Super. 13, 32 (App. Div. 2004)); *see also Gulino*, 907 F. Supp. 2d at 504 ("A defendant seeking to decertify a class

'bears a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class.'") (quoting *Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987)).

Here, Defendant argues that in deciding the motion for leave to amend, the Magistrate Judge made "new factual findings" that demonstrate that Plaintiff cannot satisfy the predominance and superiority requirements under Rule 23(B)(3).  (Def.'s Moving Decertification Br. 14-37.) Defendant contends that this Court did not consider these facts in deciding Defendant's previous motion for denial of class certification:

> [T]he District Court did not have the opportunity to fully consider the impact of the 'formidable and fact intensive' individual issues, relating to [Defendant's] then 'hypothetical counterclaims,' nor did the Court make findings relating to Defendant's defenses that many class members owed [Defendant] money for various reasons, which would preclude or at least limit recovery of class members.

(*Id.* at 14.)  This assertion is, however, refuted by the Court's discussion of Defendant's defenses in its decision on Defendant's previous motion for denial of class certification.  In rejecting Defendant's challenge that individualized counterclaims and defenses preclude the class from meeting the predominance requirement, the Court stated that "hypothetical counterclaims do not impact class certification, *particularly where the record provides no basis for finding that such counterclaims would create difficulties that outbalance the advantages of class treatment*."  (Mem. Op. 15-16 (quoting *Allen v. Holiday Universal*, 249 F.R.D. 166, 183 (E.D. Pa. 2008) (emphasis added).)  In arguing that this Court did not "make findings relating to Defendant's defenses," Defendant ignores the Court's consideration of whether the difficulties of the "hypothetical counterclaims" would outbalance the advantages of class treatment.  Specifically, in its discussion of the adequacy and typicality requirements for class treatment, the Court asserted that "[a]lthough Defendant argues that there will be individualized defenses pertaining to Ms. Korrow and

21

potentially to other class members, Defendant fails to articulate a defense that would affect liability." (Mem. Op. 20 (citing *Baby Neal v. Casey*, 43 F.3d at 57 (granting certification where "individual damage determinations could be made . . . at a separate phase of the trial, but the class phase could resolve the central issue of liability.").) Thus, contrary to Defendant's assertion, the Court had an "opportunity to fully consider the impact of the 'formidable and fact intensive' individual issues . . . relating to Defendant's defenses," and after considering these issues and the relevant case law, the Court denied Defendant's motion for denial of class certification. (Def.'s Moving Decertification Br. 14.) Accordingly, Defendant has not shown any "changed circumstances" that would warrant the decertification. Thus, Defendant's Motion to Decertify the Class is denied.

**V.      Motion for Leave to File an Amicus Brief**

NJCJI has filed a motion for leave to appear amicus curiae in support of Defendant's Motion to Decertify the Class. (ECF No. 113.) NJCJI asserts that the Court should exercise its discretion to accept its amicus curiae brief because "(1) the brief provides the Court with the specialized and unique perspective of a public interest organization consisting of members of New Jersey's business community; (2) the brief sets forth broad policy concerns, more generalized and universal than those immediately before the court in the pending motion, that no present party to this case is equipped to represent; (3) the information proffered is useful and timely; and (4) NJCJI is not partial to a particular outcome in this case." (NJCJI Moving Amicus Br. 3, ECF No. 113-1.) "The purpose of an amicus curiae is to the assist the court in a proceeding. A court may permit a non-party to proceed amicus curiae if it presents information to the court that is both timely and useful." *Fair Lab. Practices Assocs. & NPT Assocs. v. Chris Riedel & Hunter Labs., LLC*, No. 14-251, 2015 WL 3949156, at *7 (D.N.J. June 29, 2015). "The extent, if any, to which an amicus

curiae should be permitted to participate in a pending action is solely within the broad discretion of the district court." *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002) (citations omitted).

As discussed above, decertification is a drastic step that is warranted when "changed circumstances" can be shown. *See Barkouras*, 2007 WL 4545896, at *1 (quoting *Muise*, 371 N.J. Super. at 32); *see also Chiang*, 385 F.3d at 268 (characterizing decertification as a "drastic course"). NJCJI does not argue that there are any changed circumstances that warrant decertification. Rather, NJCJI argues that "fairness and judicial efficiency weigh against the certification of a class in a statutory damages case where the defendant has related claims against class members arising from the same transaction." (NJCJI Moving Decertification Br. 4-15, ECF No. 113-2.) This argument is not relevant to Defendant's Motion to Decertify the Class.[8] Accordingly, because NJCJI has failed to show that its appearance would be useful to the Court for the purposes of resolving Defendant's Motion to Decertify the Class, its motion for leave to appear amicus curiae is denied.

**VI.  <u>Conclusion</u>**

For the reasons set forth above, Defendant's Appeal of the Magistrate Judge's Denial of Its Motion for Leave to Amend, Defendant's Motion to Stay the Issuance of a Class Notice Pending Resolution of Defendant's Appeal of the June 30, 2014 Order Denying Leave to Amend, Defendant's Motion to Decertify the Class, and NJCJI's Motion for Leave to File a Brief as

---

[8] Defendant raised, and the Court considered, similar arguments as to the appropriateness of certification in connection with Defendant's preemptive Motion to Decertify the Class. (Mem. Op. 18 ("This Court, therefore, finds it appropriate to apply the TCCWNA to Defendant's contracts in a collective action.").)

Amicus Curiae are denied. Plaintiff's Motion for Approval of Class Notice and Plan of Notice is granted in part and denied in part.

<u>s/ Michael A. Shipp</u>
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated:  November 30, 2015